IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

STANLEY STEPHENS, AIS #170725,    )
    )
    Petitioner,    )
    )
v .    )    CASE NO. 3:10-cv-228-TMH
    )    (WO)
TONY PATTERSON, *et al.*,    )
    )
    Respondents.    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by petitioner Stanley Stephens ("Stephens"), a state inmate.  In this petition, Stephens challenges a conviction for capital murder imposed on him by the Circuit Court of Lee County, Alabama on August 31, 2002.  Stephens was convicted of the intentional murder of his wife and son.  He was sentenced to death. Stephens appealed, and on August 15, 2005, the Alabama Court of Criminal Appeals affirmed his conviction and appeal. *Stephens v. State*, 982 So. 2d 1110 (Ala. Crim. App. 2005).

Stephens then appealed to the Alabama Supreme Court.  On July 28, 2006, the Alabama Supreme Court affirmed Stephens' conviction but reversed his sentence and remanded for a new sentencing hearing. *Ex parte Stephens*, 982 So. 2d 1148 (Ala. 2006). The Alabama Supreme Court denied the State's application for rehearing and issued the certificate of judgment on October 11, 2006.  The Alabama Court of Criminal Appeals

remanded the case to the Circuit Court of Lee County. *Stephens v. State*, 982 So.2d 1148, 1156 (Ala. Crim. App. 2006).

On remand, the parties reached a sentencing agreement in which Stephens would receive a sentence of life imprisonment without the possibility of parole, plus costs and restitution, and Stephens would waive any and all appeals and/or post conviction proceedings that attacked his conviction or sentence. (Doc. # 13, Ex. A). At a hearing on August 24, 2007, the court sentenced Stephens to life imprisonment without the possibility of parole in accordance with the sentencing agreement. On November 2, 2007, the Alabama Court of Criminal Appeals dismissed Stephens' appeal. *See Stephens v. State*, 982 So. 2d 1155 (Ala. Crim. App. 2007).

On July 30, 2008, Stephens filed a petition for post-conviction relief.[1] The trial court denied relief after addressing Stephens' claims on the merits. The trial court's order issued on December 22, 2008. (Doc. # 13, Ex. 19 at 43-44). Stephens appealed, and on October 30, 2009, the Alabama Court of Criminal Appeals affirmed the trial court's denial of

---

[1] Although the Circuit Court of Lee County date stamped Stephens' Rule 32 petition as filed on August 25, 2008, the petition indicates that Stephens signed it on July 30, 2008. The court concludes that July 30, 2008, is the earliest date on which Stephens could have submitted the petition to prison officials for mailing. A pro se inmate's petition is deemed filed in federal cases the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). "Alabama courts have [adopted the mailbox rule and] held that a pro se incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing." *Ex parte Allen*, 825 So.2d 271, 272 (Ala. 2002); *Holland v. State*, 621 So.2d 373, 375 (Ala. Crim. App. 1993) ("[A] pro se incarcerated petitioner 'files' a Rule 32 petition when he hands the petition over to prison authorities for mailing.") Consequently, the mailbox rule applies to pro se Rule 32 petitions filed in the state courts of Alabama and the court concludes that July 30, 2008, is therefore the appropriate date of filing of Stephens' Rule 32 petition.

2

Stephens' Rule 32 petition. (Doc. # 13, Ex. 3).  The Alabama Supreme Court denied

Stephens' petition for certiorari on February 12, 2010, and the certificate of judgment issued

on February 16, 2010.  (Doc. # 13, Ex. 4).

Stephens filed this petition for habeas relief pursuant to 28 U.S.C. § 2254 on March

15, 2010.  Pursuant to Rules 8(a), *Rules Governing Section 2254 Cases in the United States*

*District Courts*, the court concludes that the petition for habeas corpus relief is due to be

denied.  No evidentiary hearing is required because the facts crucial to a fair determination

of the issues presented by the petitioner were adequately developed in the state court

proceedings.  *McCoy v. Wainwright*, 804 F.2d 1196 (11th Cir. 1986).

## II.  THE FACTS

A recitation of the facts will be helpful to an understanding of the issues.  The facts

are recounted in the direct appeal opinion of the Alabama Court of Criminal Appeals.

> The evidence presented at trial tended to establish the following. Annie Lamb Stephens and her husband, Stanley Stephens ("Stephens"), lived in a mobile home in the Lee County community of Smiths.  During the early part of 1999, Annie and Stephens separated.  Stephens continued to live in the mobile home, while Annie and the couple's three children – 13-year old Sherrie, Carman,[2] and 9-year-old Nicholas moved in with Annie's father, Earnest Perry, who lived nearby.  Annie's sister, Dorothea Lamb, also lived nearby.  Although Annie had moved out of the marital residence, she periodically returned to the residence to do laundry.

> On the morning of August 2, 1999, Annie drove her automobile to the mobile home to wash several loads of clothes.  Joan Thomas and her son, Nathaniel Thomas, lived across the road from the Stephenses' mobile home. That morning, Joan was standing in her yard when Annie drove up.  The two

---

[2]  Sherrie Stephens identified Carman as her younger sister, but never stated her exact age.

women exchanged greetings, and Annie went inside with the laundry. Annie returned to her father's home in the early afternoon, dropped off the clean laundry, and then returned to the mobile home with additional dirty laundry. Nicholas followed his mother to the mobile home on his bicycle. Neither of them were ever seen alive again.

Approximately 30 minutes after Annie arrived at the mobile home with the second bundle of laundry, Stephens drove up to the mobile home in a blue automobile. At some point, Joan Thomas and her son Nathaniel saw Stephens standing outside the mobile home, near the mailbox. Nathaniel Thomas noticed that Stephens was drinking a beer. Around 4:00 p.m., Sherrie and Carman walked over to the mobile home. Stephens walked outside, holding a bottle of beer in his hand. He gave each of his daughters a hug and a kiss. However, when the girls started toward the doorway, as if to enter the mobile home, Stephens asked them if they had a friend's house they could go to. When they responded, "yes," Stephens told them to "go chill" with their friend.

Sherrie and Carman began walking toward a friend's house but turned around and went back to the mobile home. Sherrie knocked on the door. Stephens came to the door, but did not open it. He told the girls to go back to their grandfather's house and that their mother would be home in a little while. A short while later, the girls returned to the mobile home, to discover that the door was locked. Carman picked up her brother's bicycle and took it back to their grandparents' home. Sometime later, Sherrie and Carman saw Stephens come outside. Sherrie noticed that Stephens appeared "kind of nervous and shaky." Additionally, she noticed that her father had changed clothes. As he walked toward his car, Stephens pocketed a set of keys. As he drove away, Stephens told Sherrie that Annie and Nicholas had gone shopping with a friend. Sherrie wondered why her mother would go shopping without her purse and cellular telephone, both of which were at her grandfather's house.

Later that night, Stephens returned to the Perry house. He asked Sherrie to bring him a glass of water, which she did. Stephens stayed at the Perry house for only 5 to 10 minutes before driving away again. Worried that something had happened to their mother, Sherrie and Carman tried to stay awake, but eventually fell asleep.

Later that night, around 11:00 p.m., Stephens returned to the Perry house once again. He asked Earnest Perry for a "drink of liquor" and a

4

cigarette to "calm his nerves." However, Stephens did not appear to be under the influence of alcohol at that time. Stephens also encountered Nathaniel Thomas, who was out walking. After asking for a cigarette, Stephens asked him if he wanted to get high and drink with him. He declined.

When Sherrie and Carman awoke the following morning, their mother had still not returned home. Around 11:30 a.m., the girls took their mother's purse and cellular telephone and went down the road to their aunt's house. They attempted to telephone Annie at work, but were told that she had not come in that day. The girls then walked to the Stephenses' mobile home, but the doors were locked and they were unable to get inside.

As Sherrie and Carman searched for their mother, Stephens pulled into Rubin Jones's driveway. Jones's house was approximately five minutes from the Stephenses' mobile home. Rubin Jones, his daughter Lori Jones, Matthew Cooper, and Abraham Colquitt were outside in the front yard when Stephens drove up. Stephens got out of his car and asked for a cigarette. Lori Jones asked Stephens, "How's Annie?" Stephens replied, "Dead." Taken aback, Lori stated, "Well, you must have killed her." Stephens nodded affirmatively and began crying. Stephens said that he wanted to turn himself in to the police, and Lori went inside and telephoned 911 for emergency assistance. While Lori was inside telephoning for assistance, Stephens pulled a knife out of his pants pocket and said that he had stabbed Annie. Stephens tried to give the knife to Cooper, but Cooper refused to touch it. Stephens then put the knife back in his pocket.

Moments later, Deputy Scott Stover of the Lee County Sheriff's Department arrived at the Jones's house. As Deputy Stover got out of his patrol car and walked toward the house, a man stated, "the person you need to see is coming," indicating Stephens. Deputy Stover saw Stephens place his hands behind his back. Deputy Stover noticed that Stephens appeared to be "real sad." For his safety, Deputy Stover performed a brief pat-down search of Stephens and discovered a knife in his pants pocket.

Stephens attempted to tell Deputy Stover what had happened, but Stover told Stephens not to say anything more until after he had been advised of his rights. Deputy Stover then informed Stephens of his *Miranda*[3] rights and made sure that Stephens understood those rights. Stephens indicated that

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

he understood his rights. Stephens then told Deputy Stover that he had killed his wife; he also told Stover where his wife's body was located. Deputy Stover notified the sheriff's department and requested that another unit investigate the address Stephens had given him.

Two patrol units responded to the report of a possible homicide at the Stephenses' mobile home. Deputies Linda Ferrell and Russell Bledsole arrived at the mobile home first; seconds later, Deputy Keith Jordan arrived. The deputies knocked on the doors and windows of the mobile home—trying to get a response—to no avail. Finally, Deputy Jordan kicked in the back door. Upon entry, Deputy Jordan and Deputy Bledsole found the bodies of Annie Stephens and her nine-year-old son Nicholas on the floor of the living room. The deputies secured the scene, notified the sheriff's department of what they had discovered, and waited for the homicide investigators to arrive. Homicide investigators arrived and began to process the crime scene. The bodies of Annie and Nicholas were lying near each other on the living room floor; Nicholas's arm was lying across his mother's head. The living room was in a state of disarray—furniture was overturned and clothes were strewn about. There were blood splatters on the walls, the curtains, the sofa, and a rocking chair. The kitchen was in a similar state of disarray. Drawers and cabinet doors were standing open; various kitchen implements—including a number of knives—were found on the floor and counters. Additional blood splatters were found in the kitchen—evidence of a struggle—as well as a trail of blood leading from the living room into the kitchen.

Annie's partially clothed body was found facedown on the living room floor. There was a cushion under the lower half of her torso, and her panties had been removed. When investigators removed the towel that covered her head, they discovered a belt looped and fastened around her neck. There were 30 cut and stab wounds to her chest, back, face, hands, and arms—resulting in massive blood loss. Several of the chest wounds had pierced her lungs and heart. Her right breast was almost severed from the body. There was severe bruising to her face and neck, indicating that the belt had been put around her neck and the blows to her face had been administered before her death. Dr. Gregory Wanger, a state medical examiner, testified that the cause of death was multiple stab wounds.

Nicholas's body was clothed in a blood-soaked T-shirt. There were 37 cut and stab wounds to his chest, neck, and arms. Several of the chest wounds had pierced his lungs, heart, liver, and stomach. Additionally, the wound to

6

his neck was so deep that it exposed the underlying tissue. Dr. Wanger testified that Nicholas's cause of death was "multiple sharp force injuries."

Stephens's defense counsel rested without putting on any evidence. After both sides had rested and the trial court had instructed the jury on the applicable law, the jury determined that the murders of Annie and Nicholas Stephens had been committed pursuant to a common scheme or plan, and it convicted Stephens of capital murder.

During the penalty phase of Stephens's trial, the State resubmitted all of the evidence it had introduced during the guilt phase, including Stephens's 1992 guilty-plea conviction for second-degree assault arising out an incident wherein he had shot his wife, Annie Lamb Stephens, in the face and chest with a shotgun.

Stephens offered the testimony of several witnesses during the penalty phase. Lizzie Perry, Stephens's mother, testified that she had raised her son to be a loving, obedient child. Perry testified that her son's second-degree assault conviction had come during a time when he was "running with the wrong crowd." She testified that Stephens loved his children and that he could not have been in his "right mind" when he killed Annie and Nicholas. Donna Ferguson, a school counselor and neighbor of the Stephens family, testified that before this incident, Stephens had always appeared to be a responsible parent. Ferguson testified that she was concerned about the effect Stephens's trial would have on his daughters, Sherrie and Carman.

Stephens also offered the testimony of Dr. Catherine Boyer, a forensic psychologist, and Dr. Gregory Skipper, a physician board-certified in addiction medicine. Dr. Boyer testified that she had met with Stephens on four separate occasions after the incident in order to evaluate his mental condition. Dr. Boyer determined that Stephen's IQ was below average, that his verbal IQ was 73 and his performance IQ was 86, resulting in a full-scale IQ of 77. In Dr. Boyer's opinion, Stephens was not suffering from an antisocial personality disorder. Nor had Stephens's use of crack cocaine resulted in significant criminal activity. However, Dr. Boyer testified that Stephens's use of crack cocaine would have increased his tendency toward aggression at the time of the offense. Dr. Boyer testified that the nature of the crime itself suggested that Stephens was suffering from a significant mental or emotional disturbance at the time he killed Annie and Nicholas.

Dr. Skipper testified that the use of crack cocaine for long periods can result in decreased mental function. Dr. Skipper testified that the tests he administered to Stephen indicated that Stephens was addicted to crack cocaine. Using crack cocaine, he testified, could result in a psychotic state where a person could do something and "not even realize that [he was] doing it." However, Dr. Skipper acknowledged, there was no way of knowing whether Stephens was under the influence of crack cocaine at the time he killed Annie and Nicholas because no forensic testing had been done.

After both sides had rested and the trial court instructed the jury on the law applicable to the penalty phase, the jury returned an advisory verdict recommending that Stephens be sentenced to death.

*Stephens*, 982 So.2d at 1116-19 (footnotes in original).

## III.  THE ISSUES

In his habeas petition in this court, Stephens raises the following issues:

1.  Trial counsel was ineffective for failing to object to the venire "on the grounds that disabled citizens were systematically excluded" from his jury.

2.  Trial counsel was ineffective for failing to object to and exclude the testimony of the forensics expert regarding the test he performed on the victim's rib.

3   Trial counsel was ineffective for failing to advise the petitioner of his right to testify on his own behalf.

4.  Trial counsel was ineffective for failing to object to the trial court's "failure to define an essential element of the capital offense" in the jury instructions.

5.  Trial counsel was ineffective for failing to request and/or object to the lack of instructions regarding the petitioner's failure to testify.

6.  Trial counsel was ineffective for failing to object to the bailiff delivering an instruction to the jury during deliberations.

7.      Trial counsel was ineffective when he "failed to object to the trial court's erroneous jury instructions that allowed the petitioner to be convicted of capital murder based on the mere fact that two people were killed."

8       Appellate counsel on direct appeal was ineffective for allowing petitioner to waive his rights to seek post conviction review of his conviction in return for a sentence of life imprisonment without the possibility of parole.

9.      The trial court lacked jurisdiction to render judgment or impose sentence on the petitioner because the statute, ALA. CODE § 13A-5-40(a)(10), is void and unconstitutional.

10.     Petitioner was denied due process of law when the trial court admitted evidence of his inculpatory statement.

11.     Petitioner was denied due process of law when the trial court admitted evidence of his prior bad acts towards his wife, Annie Stephens.

12.     Petitioner was denied due process of law when the trial court erroneously admitted highly prejudicial photographs of the victims.

13.     Petitioner's 5th, 6th and 14th Amendment rights were violated when the indictment failed to state the specific aggravating factors that would permit the imposition of the death penalty.

14.     Petitioner was denied due process of law when the trial court failed to charge the jury on lesser included offenses of murder and manslaughter.

(Doc. # 1, Pet., at 9-16).

## IV. DISCUSSION

## A. CLAIMS ADJUDICATED BY THE STATE COURT

The respondents assert that Stephens' claims of ineffective assistance of counsel and

other substantive claims entitle him to no relief from this court as the state courts properly

adjudicated these claims on the merits. *Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A

habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to

relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."). *See also*

*Williams v. Taylor*, 529 U.S. 362, 402 (2000).

Stephens' habeas petition is governed by 28 U.S.C. § 2254, as amended by the Anti-

Terrorism and Effective Death Penalty Act ["AEDPA"].  To prevail on a § 2254 claim

adjudicated on the merits by the state courts, Stephens must demonstrate that the decisions

by the Alabama courts were "contrary to, or involved an unreasonable application, of clearly

established Federal law, as determined by the Supreme Court of the United States," or was

"based on an unreasonable determination of the facts, in light of the evidence presented in

the State court proceeding." *See Williams*, 529 U.S. at 404-05 & 412-13.  *See also* 28

U.S.C. § 2254(d)(1) & (2).   In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court
> has on a set of materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413.

A state court's decision involves an "unreasonable application" of federal law if it

either (1) correctly identifies the governing rule but then applies it to a new set of facts in

a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle in a new context in a way that is objectively unreasonable. *Id.* at 407. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1).  However, even when the state court addresses a question of law, this court is

not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of §

2254(d)."  *Price*, 538 U.S. at 639.  The Supreme Court further admonishes that any such *de*

*novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. §

2254(d)...."  *Id.*, at 636.  Thus, a federal "district court's review ... [of claims decided by the

state courts] is greatly circumscribed and highly deferential to the state courts."  *Crawford*

*v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002).  The AEDPA "modified a federal habeas

court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible

under law."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).

### A.    The Ineffective Assistance of Counsel Claims

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair

trial.  Stephens must satisfy the requirements of a two-pronged test to prevail on his claims

of ineffective assistance of counsel.  First, Stephens must establish that his attorney's

performance "fell below an objective standard of reasonableness."  *Strickland v.*

*Washington*, 466 U.S. 668, 688 (1984).  "The proper measure of attorney performance

remains simply reasonableness under prevailing professional norms."  *Id*.  Once this

threshold test is met, Stephens must then show that the deficient performance of his counsel

prejudiced his defense.  *Id.* at 687.  To establish prejudice, Stephens is required to show that

there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. With regard to the two-prong test itself, the *Strickland* Court determined that a court should not treat the test as a mechanical set of rules. Therefore,

> there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . . that course should be followed.

*Id*. at 697.

Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Williams*, 529 U.S. at 393 n. 17. There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

The Alabama Court of Criminal Appeals applied *Strickland* in affirming the lower court's decision to deny relief on Stephens' claims of ineffective assistance of counsel. (Doc. # 13, Ex. 3) Upon its examination of the record, including the state courts' orders containing specific findings of fact with regard to Stephens' ineffective assistance of counsel

13

claims, the appellate court agreed with the trial court that Stephens had failed to prove that trial counsel performed deficiently and that he was prejudiced thereby. (*Id.*) The Court of Criminal Appeals then affirmed the trial court's decision. (*Id.*)

*Strickland* sets forth the clearly established federal law on the issue of counsel's effectiveness. The state courts did not decide and Stephens does not show that his claims of ineffective assistance of counsel were decided "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 529 U.S. at 412. Consequently, the state appellate court's rejection of the ineffective assistance of counsel claims was not contrary to Supreme Court decisions. Thus, this court will determine whether the state appellate court's rejection of Stephens' claims of ineffective assistance of counsel "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

> In determining whether the state court's decision is an unreasonable application of the law set out in [applicable] Supreme Court decisions, we need not decide whether we would have reached the same result as the state court if we had been deciding the issue in the first instance. Instead, we decide only whether the state court's decision of the issue is objectively unreasonably. *See Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000) ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Brown v. Head*, 272 F.3d 1308, [1313] (11th Cir. 2001)("It is the objective

reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

*Wright v. Sec'y for the Dept. of Corrs.*, 278 F.3d 1245, 1256 (11th Cir. 2002).

    1. *Ineffective Assistance of Counsel - Jury Venire Claim*.  In his Rule 32 petition, Stephens contended that his trial counsel was ineffective for failing to object to the venire "on the grounds that disabled citizens were systematically excluded" from his jury.  The Alabama Court of Criminal Appeals denied relief on this claim on the basis that Stephens "fails to support this contention with any factual reference, as argued by the State in its response.  Therefore, summary denial of this allegation was proper pursuant to Rule 32.6(b)[4], ALA. R. CRIM. P."  (Doc. # 13, Ex. 3 at 3) (footnote added).  This conclusion by the Alabama Court of Criminal Appeals is a ruling on the merits of the claim.  *Boyd v. Comm'r, Ala. Dep't of Corrs.*, 697 F.3d 1320, 1331 (11th Cir. 2012) (A summary dismissal of a federal claim by Alabama courts for failure to comply with Rule 32.6(b) is similarly a ruling on the merits).  *See also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770 (2011) (A state court's rejection of federal claims is presumptively a decision on the merits subject to rebuttal by a defendant).

    Stephens raises this claim in this court but he does not allege any facts to support this ineffective assistance of counsel claim.  Stephens fails to allege any facts that suggest that

---

    [4] ALA. R. CRIM. P. 32.6(b) provides that a "petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."

any prospective jurors were excluded on the basis of disability. Stephens' mere recitation that counsel's performance was deficient without a showing of how that is so does not establish that counsel's performance fell below an objective standard of reasonableness. Nor does his assertion that he was prejudiced by counsel's allegedly deficient performance suffice. Consequently, this type of vague, conclusory claim unsupported by any facts or references to the record is insufficient to demonstrate that the state court's conclusion was contrary to or involved an unreasonable application of *Strickland*. *See Boyd*, 697 F.3d at 1332-33. Stephens fails to meet his burden of demonstrating that the state court's rejection of this claim was not objectively reasonable, and he is not entitled to relief on this claim.

2. *Ineffective Assistance of Counsel - Forensics Expert's Testimony Claim*. Stephens asserts that his trial counsel was ineffective for failing to object and move to exclude the testimony of the forensics expert because the testimony did not meet the *Daubert*[5] standard. According to Stephens, his counsel was ineffective for failing to object to the expert's testimony because the expert used silicon in his testing. During the trial, the State's expert, Joe Saloom, testified that he conducted tests on the ribs of the victims Annie Stephens and Nicholas Stephens to determine whether any of the knives seized from Stanley Stephens' mobile home made the cuts on the ribs. (Doc. # 13, Ex. 12 at 91-108). During a status conference prior to trial, defense counsel challenged the admissibility of Saloom's testimony. (Doc. # 13, Ex. 9 at 6-14). At that time, Saloom was qualified as an expert and

---

[5] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

permitted to testify. (*Id.*) At trial, defense counsel again objected to Saloom's testimony and the objection was again overruled. Counsel raised a continuing objection to Saloom's testimony. Counsel objected to the expert's testimony, and continued to object but his objections were overruled. Thus, counsel's performance cannot be deemed deficient.

Moreover, Stephens raised the identical claim in his Rule 32 petition which was addressed by the Alabama Court of Criminal Appeals.

> Stephens next argues that his trial counsel was ineffective for failing to object to the testimony of the forensics expert concerning tool marks, because the expert used silicone in his test. Stephens cites to a case involving breast implants to argue that the use of silicone was improper. This claim was properly dismissed because it is not meritorious on its face and it fails to state a claim for which relief can be given, as argued by the State. Rule 32.7(d), ALA. R. CRIM. P.

(Doc. # 13, Ex. 3 at 4).

This ruling constitutes a ruling on the merits which, therefore, is entitled to deference. Stephens has not come forward with any evidence to demonstrate that the expert's testimony was erroneously introduced, or that he was prejudiced by the admission of the testimony.[6] Consequently, this court cannot find that the Alabama court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Stephens is entitled to no relief on this claim.

---

[6] A number of witnesses connected Stephens to the knife that was used as the murder weapon, including law enforcement officers who testified that a knife was found on Stephens when he was arrested. Stephens' own inculpatory statement was admitted into evidence. Finally, DNA testing identifying blood found on the knife as belonging to Nicholas Stephens was admitted at trial.

3. *Ineffective Assistance of Counsel - Right to Testify Claim*.  Stephens alleges that

his counsel was ineffective for failing to advise him of his right to testify.

> A criminal defendant has a "fundamental constitutional right to testify in his
> or her own behalf at trial," and that "right is personal to the defendant and
> cannot be waived either by the trial court or by defense counsel." *United
> States v. Teague,* 953 F.2d 1525, 1532 (11th Cir.1992) (en banc). Deficient
> performance may be established "where counsel has refused to accept the
> defendant's decision to testify and refused to call him to the stand, or where
> defense counsel never informed the defendant of his right to testify and that
> the final decision belongs to the defendant alone." *Gallego v. United States,*
> 174 F.3d 1196, 1197 (11th Cir.1999).

*Jones v. Sec'y, Dep't of Corrs.*, 487 Fed. Appx. 563, 567 (11th Cir. 2012)

According to Stephens, "had [he] been informed of his right to testify he would have

chosen to take the stand and told the jury his side of the story."  (Doc. # 1 at 10).  This

precise issue was raised in Stephens' Rule 32 petition which was addressed by the Alabama

Court of Criminal Appeals.

> Stephens alleges, as a bare allegation, that his trial counsel was ineffective for
> failing to inform him of his right to testify.  He fails to provide any specifics
> as to what would have been the nature of his testimony, nor does he make any
> showing as to possible prejudice as a result of his failure to testify.  "'Mere
> conclusory allegations in support of claims of ineffective assistance of counsel
> . . . are insufficient as a matter of law to raise a constitutional issue.'" <u>Davis
> v. State</u>, [Ms. CR-05-2050, August 7, 2009] ___ So. 3d ___, ___ (Ala. Crim.
> App. 2009).
>
> > "'Furthermore, a petitioner seeking postconviction discovery
> > also must meet the requirements of Rule 32.6(b), Ala. R. Crim.
> > P., which states:
> >
> > > "'" The petition must contain a clear and specific
> > > statement of the grounds upon which relief is
> > > sought, including full disclosure of the factual

18

> basis of those grounds.  A bare allegation that a
> constitutional right has been violated and mere
> conclusions of law shall not be sufficient to
> warrant any further proceedings."'"

Bush v. State, [Ms. Cr-03-1902, May 29, 2009] ___ So. 3d ___, ___ (Ala.
Crim. App. 2009), quoting Ex parte Land, 775 So. 2d 847, 852-53 (Ala.
2000).  Thus, summary denial of this ground was proper.

(Doc. # 13, Ex. 3 at 4).

In none of his pleadings does Stephens set forth what his testimony would have been had he testified at trial.  Moreover, Stephens has not shown that he was prejudiced by not testifying. *See Jones*, *supra*. *See also Morris v. Sec'y, Dep't of Corrs.*, 677 F.3d 1117, 1129 (11th Cir. 2012).  Because Stephens has failed to identify any evidence he might have offered that would have affected the outcome of his trial, Stephens "has not proven by a preponderance of the evidence that his counsel's performance was deficient" or that he was prejudiced by his failure to testify.  Stephens' bare assertion that his counsel rendered ineffective assistance by failing to allow him to testify is simply insufficient to satisfy the *Strickland* standard.  Consequently, Stephens has failed to establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Thus, Stephens has failed to establish an ineffective assistance of counsel claim on this ground. *See Id*., at 697.  The state court's rejection of this claim was objectively reasonable. *Williams*, 529 U.S. at 405-06.  Therefore, the court cannot conclude that the Alabama Court of Criminal Appeals' decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

19

28 U.S.C. § 2254(d)(1). Therefore, Stephens is not entitled to federal habeas relief based on this claim.

      4.  *Ineffective Assistance of Counsel - Element of the Offense Jury Instruction*. Stephens contends that his trial counsel was ineffective for failing "to object to the trial court's failure to define an essential element of the capital offense." (Doc. # 1 at 10). Stephens raised this exact issue in his Rule 32 petition. The Alabama Court of Criminal Appeals rejected this claim.

> Stephens also claims that his trial counsel was ineffective for failing to object to the trial court's failure to define an essential element of the offense, "'by one act or pursuant to one scheme or course of conduct.'" (Stephens's Brief at 19). However, this term has no statutory definition and could easily be understood by jurors according to its common meaning.

> > "'When a term is included in a statute relevant to a case, and that term is not defined by statute, whether it is necessary for the trial court to define the term for the jury hinges on the facts of the case.' <u>Ivery v. State</u>, 686 So. 2d 495, 501-02 (Ala. Crim. App.), aff'd on return to remand, 686 So. 2d 520 (Ala. Crim. App. 1996). As used in this case, the terms 'any means,' 'any crime of violence,' and 'damage to property' are terms that could be 'understood by the average juror in their common usage.' <u>Thornton v. State</u>, 570 So. 2d 762, 772 (Ala. Crim. App. 1990). Moreover, [Appellant] has failed to show how a definition of these terms could have clarified their meaning to the jury, or that the lack of such definitions contributed to confusion among the jurors as to the meaning of these terms."

> <u>Landsdell v. State</u>, [Ms. CR-05-0243, September 28, 2007] ___ So. 3d ___, ___ (Ala. Crim. App. 2007). Because Stephens's claim is without merit and he has failed to show any prejudice as a result of the trial court's instruction, as argued by the State, the trial court's summary dismissal was proper.

(Doc. # 13, Ex. 3 at 4-5).

This determination constitutes a ruling on the merits which is entitled to deference. Moreover, Stephens' assertion in this regard is no more than a conclusory allegation challenging his trial counsel's performance. He demonstrates no impropriety in the manner in which the instructions were given, nor does he allege any prejudice supposedly resulting from the court's instructions. Stephens fails to demonstrate how the instructions were erroneous. Thus, counsel is not ineffective for failing to raise an meritless objection. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Consequently, this court cannot find that the Alabama court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Stephens is entitled to no relief on this claim.

5. *Ineffective Assistance of Counsel - Jury Instructions regarding Defendant's Failure to Testify Claim*. Stephens contends that his trial counsel was ineffective for failing to "request and/or object to the lack of jury instructions regarding [his] failure to testify." (Doc. # 1 at 11). Stephens presented this identical issue in his Rule 32 petition, and which the Alabama Court of Criminal Appeals addressed.

> Stephens also contends that his trial counsel was ineffective for failing to object to the lack of instructions by the trial court concerning his decision not to testify. However, he simply argues that the trial court's failure to give this instruction allowed the jury to assume that he was guilty and the "omission in this regard was prejudicial to [his] fundamental rights." (Stephens's Brief at 20). This bare allegation is insufficient to support this claim and therefore, it was properly denied. It is not required that a trial court give such a charge unless he is requested to do so. Blackmon v. State, 7 So.

21

3d 397, 428-29 (Ala. Crim. App. 2005), quoting <u>Carter v. Kentucky</u>, 450 U.S. 288, 101 S.Ct. 1112, 67 L. Ed. 2d 241 (1981). Therefore, the trial court did not err in failing to give such an instruction sua sponte, which claim would be precluded as it could have been raised at trial, <u>Shaw v. State</u>, 949 So. 2d 184, 188 (Ala. Crim. App. 2006); nor was his counsel shown to have been ineffective for failing to object on this ground.

(Doc. # 13, Ex. 3 at 5-6)

This is a ruling on the merits which is entitled to deference. More importantly, however, Stephens has failed to demonstrate that he was denied effective assistance of counsel when his trial counsel failed to request or object to the trial court's failure to instruct the jury regarding his failure to testify. Stephens neither specifically alleges how the trial court's instructions were deficient nor does he suggest the substance of any instructions the trial court should have given, but did not. The court has carefully reviewed the trial court's instructions to the jury. The trial court specifically instructed the jury that

> the Defendant as he has every right to do filed a plea of not guilty. This plea casts the burden of proof on the State of Alabama to prove beyond a reasonable doubt and to a moral certainty that the Defendant is guilty as charged. The Defendant has no burden of proof whatsoever. He does not have to prove that he is innocent. He comes into court with a presumption of innocence, which surrounds him throughout the trial of this case and even attends him in the Jury room until each and every member of the Jury after considering all the evidence in the case are convinced beyond a reasonable doubt that he is guilty as charged, and then at that time and only at that time would he shed this presumption of innocence, sometimes referred to as the cloak of innocence. The presumption of innocence is to be regarded by you as evidence in favor of the Defendant.

(Doc. # 13, Ex. 13 at 55). The record also reflects that the trial court properly instructed the jury on reasonable doubt; on the jury's duty as the fact finder in the case; on the jury's right

to disregard all, some, or none of the testimony from any witness; and on the jury's duty to find Stephens not guilty if it did not believe the State had proved each element of the charged offenses.  Counsel cannot be ineffective for failing to raise an meritless objection, and the jury instructions were not erroneous.  *See Chandler, supra*.  Once again, Stephens' conclusory allegations that his counsel rendered ineffective assistance are insufficient to satisfy the *Strickland* standard.  The state court's rejection of this claim was objectively reasonable.  *Williams*, 529 U.S. at 405-06.  The court cannot find that the Alabama court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  Stephens is entitled to no relief on this claim.

6. *Ineffective Assistance of Counsel - Bailiff delivering instructions to Jury*.  Stephens contends that his trial counsel was ineffective for failing to object to the bailiff delivering to the jury the court's response to an inquiry from the jury.  According to Stephens, he was deprived of a fundamentally fair trial when "[a]fter the court and counsels (sic) discussed the matter, the court allowed the bailiff to enter the jury room while the jurors were deliberating and answer the question imposed by the jury."  (Doc. # 1 at 11).  After raising this same issue in his Rule 32 petition, the Alabama Court of Criminal Appeals denied it on its merits.

> Stephens alleges that his trial court (sic) was ineffective for failing to object to the bailiff's delivering an instruction to the jury during deliberations. The State correctly responded that this claim constituted a bare allegation with no support or authority.  Thus, the trial court properly denied this claim.

> Moreover, there was no impropriety in the bailiff simply delivering the instruction. <u>See</u> <u>Hallman v. State</u>, 36 Ala. App. 592, 595, 61 So. 2d 857, 860 (1952).

(Doc. # 13, Ex. 3 at 6).

This ruling on the merit is entitled to deference, and Stephens does not point to any evidence that would suggest that the bailiff acted inappropriately or that his actions affected the outcome of the trial. Stephens' allegations are insufficient to compel a finding that his trial counsel was ineffective for failing to object to the bailiff delivering the court's response. Stephens has failed to demonstrate how counsel's allegedly deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687. Stephens has also failed to demonstrate how he was prejudiced by counsel's allegedly deficient performance. To succeed on this ineffective assistance of counsel claim, Stephens must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*., at 694. This he has failed to do. Thus, the court cannot find that the Alabama Court of Criminal Appeals' decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Stephens is entitled to no relief on this claim.

7. *Ineffective Assistance of Counsel - Erroneous Jury Instructions*. Finally, Stephens contends that his trial counsel was ineffective for failing "to object to the trial court's erroneous jury instructions that allowed the petitioner to be convicted of capital murder

24

based on the mere fact that two people were killed." (Doc. # 1 at 12). Stephens raised this

exact claim in his Rule 32 petition, and the Alabama Court of Criminal Appeals rejected it.

> Stephens argues that his trial counsel's performance was deficient due
> to his failure to object to the trial court's erroneous instructions that allowed
> the jury to convict him of capital murder "based on the mere fact that two
> people were killed." (Stephens's Brief at 21). However, the instruction
> quoted by Stephens was proper and therefore this claim is facially without
> merit. Moreover, a review of the original trial record reveals that the trial
> court completely charged the jury as to the elements of capital murder. (R.
> 1800-05).
> Stephens has failed to meet his burden in showing ineffectiveness on
> the part of his trial counsel.

(Doc. # 13, Ex. 3 at 6) (footnote omitted).

This is clearly a determination on the merits that is entitled to deference from this

court. The Alabama court determined that the instruction given by the court was correct as

a matter of law, and Stephens presents nothing to rebut that determination.

Furthermore, Stephens asserts that because the court did not explain the meaning of

the phrase "pursuant to one scheme or course of conduct," the jury convicted him solely

based on "the mere fact that two people were killed." Stephens' assertion in this regard is

no more than a conclusory allegation challenging his trial counsel's performance. He

demonstrates no impropriety in the manner in which the instructions were given, and any

prejudice supposedly resulting from the court's instructions is entirely speculative. The trial

court properly instructed the jury on the elements of capital murder, murder, and

manslaughter. (Doc. # 13, Ex. 13 at 56-59). Stephens has failed to demonstrate how

counsel's failure to object to the instructions rendered the result of the trial unreliable or the

proceeding fundamentally unfair, or how he was prejudiced. Stephens has failed to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Therefore, this court cannot find that the Alabama court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Stephens is not entitled to relief on this claim.

8. *Ineffective Assistance of Appellate Counsel*. The court now turns to Stephens' claims of ineffective assistance of counsel leveled at his appellate counsel on direct appeal. Stephens raises the same two claims in this court that he raised in his Rule 32 petition and which the Alabama Court of Criminal Appeals characterized as follows.

> Stephens alleges that his appellate counsel was ineffective for two reasons: he improperly allowed Stephens to waive his right to appeal and to file for postconviction relief; and he abandoned all but one of his claims raised on direct appeal when filing his petition for writ of certiorari to the Alabama Supreme Court.

(Doc. # 13, Ex. 3 at 6).

The court rejected Stephens' claims.

> Stephens has failed to show that his appellate counsel was ineffective for allowing him to waive his rights to appeal and postconviction relief in return for recommending a sentence of life without parole rather than death. As noted by the trial court in his order, "[i]t is clear that in arguing for a reduction in the defendant's sentence, counsel was quite effective." (R. 44.) Moreover, Stephens has failed to show prejudice as he received the lesser of the two possible sentences, and he clearly is able to raise claims in postconviction proceedings. See  Ex parte Lawley, 512 So. 2d 1370 (Ala.

26

1987); <u>Arnold v. State</u>, 590 So. 2d 387, 387-88 (Ala. Crim. App. 1991); <u>Duncan v. State</u>, 722 So. 2d 795, 799 (Ala. Crim. App. 1998).

"Under the standards enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by this Court in <u>Ex parte Baldwin</u>, 456 So. 2d 129 (Ala. 1984), a two-pronged test must be met before a claim of ineffective assistance of counsel is proven. A convicted defendant, in order to secure a reversal of his conviction, must show: (1) that counsel's performance was deficient, which requires a showing that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced defendant, which requires a showing that a different outcome of the trial probably would have resulted but for counsel's allegedly ineffective performance. <u>Strickland</u>, <u>supra</u>, 466 U.S. at 687, 104 S.Ct. at 2064.

"To meet the first prong of the test, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel's assistance was reasonable, considering all the circumstances. <u>Strickland</u>, <u>supra</u>, 466 U.S. at 688, 104 S.Ct. at 2065.

"In adjudicating the effectiveness of a counselor's assistance, a 'court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' <u>Strickland</u>, <u>supra</u>, 466 U.S. at 690, 104 S.Ct. at 2066. Moreover, that petitioner was convicted does not prove that counsel lacked zeal or competence. <u>Summers v. State</u>, 366 So. 2d 336 (Ala.Cr.App.), writ denied, 366 So. 2d 346 (Ala. 1978). 'It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission was unreasonable.' <u>Strickland</u>, <u>supra</u>, 466 U.S. at 689, 104 S.Ct. at 2065."

Ex parte Lawley, 512 So. 2d 1370, 1372 (Ala. 1987).

> Applying the two-prong test of ineffectiveness, Stephens's appellate counsel was also not ineffective for only raising one issue to the Alabama Supreme Court in his petition for writ of certiorari. In fact, the Court reversed and remanded this cause as to Stephens's sentencing on certiorari review.

> > "'"[E]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places were objections might be made."' Stringfellow v. State, 485 So. 2d 1238, 1243 (Ala.Cr.App. 1986). 'Even though there were several instances where counsel could have objected, "that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel." Ex parte Lawley, 512 So. 2d 1370, 1373 (Ala. 1987). 'O'Neil v. State, 605 So. 2d 1247, 1250 (Ala.Cr.App/ 1992)."

> Daniels v. State, 650 So.2d 544, 555 (Ala. Crim. App. 1994), cert. denied, Daniels v. Alabama, 541 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed. 2d 230 (1995).

> > Stephens has failed to show that his appellate counsel's performance was deficient.

(Doc. # 13, Ex. 3 at 6-8).

Although Stephens complains that his appellate counsel was ineffective for waiving his right to challenge his sentence or seek review of his conviction, the court notes that the waiver occurred *after* Stephens' conviction had been affirmed on direct appeal. More importantly, the waiver has not precluded Stephens from challenging his conviction and sentence in a Rule 32 proceeding or in this court. Consequently, Stephens cannot demonstrate that he was prejudiced by agreeing to the waiver. *See Strickland, supra*. Finally, appellate counsel was successful in reversing Stephens' death sentence and securing

for him a sentence of life imprisonment.[7]   Therefore, under *Strickland*, counsel's

performance cannot be characterized as deficient, and Stephens has failed to demonstrate

prejudice.  Thus, this court cannot find that the Alabama court's decision was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  Stephens is entitled to

no relief on these claims.

**B. Jurisdictional Claim.**  In addition to the ineffective assistance of counsel claims,

Stephens also contends that the trial court "lacked jurisdiction to render judgment or to

impose sentence because the statute upon which [he] was indicted in (sic) unconstitutional."

(Doc. # 1 at 13).  This claim was raised in Stephens' Rule 32 petition and was rejected by

the trial and appellate courts as procedurally barred.  The Alabama Court of Criminal

Appeals also found that the claim was properly dismissed.

> Finally, Stephens argued that the trial court lacked jurisdiction to
> render the judgment or impose his sentence because, he claims, § 13A-5-40(a)
> (10), Ala. Code 1975, is unconstitutionally vague.  However, constitutional
> matters do not implicate the jurisdiction of the trial court.  <u>Chaney v. State</u>,
> 892 So. 2d 466, 470 (Ala. Crim. App. 2004); <u>Barrett v. State</u>, 705 So. 2d 529
> (Ala. Crim. App. 1996); <u>Puckett v. State</u>, 680 So. 2d 980 (Ala. Crim. App.
> 1996); <u>Anderson v. State</u>, 418 So. 2d 967 (Ala. Crim. App. 1982); <u>Hansen v.</u>
> <u>State</u>, 598 So. 2d 1 (Ala. Crim. App. 1991).  Therefore, this matter could have
> been raised at trial and is precluded, as argued by the State.  Rule 32.2(3),
> Ala.R.Crim.P.

---

[7]  To the extent that Stephens complains that his appellate counsel failed to raise other issues,
"[a]ppellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit."
*Jones*, 487 Fed. Appx. at 568 quoting *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000)
(quotation marks omitted).

Moreover, §13A-5-40(a)(10), Ala. Code 1975, "provides fair warning of what is forbidden.  See Rose v. Locke, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).  This section informs ordinary people of the prohibited conduct.  See Wright v. State, 599 So. 2d 637, 638 (Ala.Cr.App.), cert denied, 609 So. 2d 452 (Ala. 1992).  "Ex parte Woodward, 631 So. 2d 1065, 1069 (Ala. Crim. App. 1993).

> """The doctrine of vagueness, . . . originates in the due process clause of the Fourteenth Amendment, see Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, see United States v. National Dairy Products Corporation, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed. 2d 561 (1963)

> """Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.  United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996 (1954).  A vague statute does not give adequate 'notice of the required conduct to one who would avoid its penalties,' Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (1951), is not 'sufficiently focused to forewarn of both its reach and coverage,' United States v. National Dairy Products Corporation, 372 U.S. at 33, 83 S.Ct. at 598, 9 L.Ed.2d at 566, and 'may trap the innocent by not providing fair warning," Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28 (1972).

> """As the United States Supreme Court observed in Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948):

        """There must be ascertainable standards of guilt.  Men of common intelligence cannot be required to guess at the meaning of the enactment.  The vagueness may be from uncertainty in regard to persons within the scope of the act, or in regard to the applicable tests to ascertain guilt.'"

        """333 U.S. at 515-16, 68 S.Ct. at 670, 92 L.Ed.2d [at] 849-50 [citations omitted]."

        "'McCrary v. State, 429 So. 2d 1121, 1123-24 (Ala.Cr.App. 1982), cert. denied, 464 U.S. 1163, 1165 (Ala. Crim. App. 1990).

    Ex Parte Woodward, 631 So. 2d 1065, 1068 (Ala. Crim. App. 1993), quoting McCall v. State, 565 So. 2d 1163, 1165 (Ala. Crim. App. 1990).

        Stephens's claim concerning the constitutionality of this statute is precluded; moreover, it is without merit.

(Doc. # 13, Ex. 3 at 8-10).

    Stephens was charged with, and convicted of, capital murder because "two or more persons [were] murdered by the defendant by one act or pursuant to one scheme or course of conduct."  Ala Code § 13A-5-40(a)(10) (1975).  Stephens contends the capital murder statute is unconstitutionally vague because the statute does not define the element of the offense encompassed by the phrase "by one act or pursuant to one scheme or course of conduct."  (Doc. # 1 at 13).  This phrase is not so imprecise that "an individual cannot reasonably understand the conduct prohibited by the statute." *Cobb v. Wainwright*, 666 F.2d 966, 969 (11th Cir. 1982).

> The due process clause of the fourteenth amendment prohibits states from holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 342 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954); *United States v. Insco*, 496 F.2d 204, 208 (5th Cir. 1974). But due process does not require impossible standards of specificity in criminal statutes.

*Id*.

The language in the statute is not unconstitutionally vague.  The statute prohibits the murder of two or more persons pursuant to a single scheme or course of conduct.  "[A] person for ordinary intelligence could reasonably be expected to understand what such a clause forbids." *Gable v. Massey*, 566 F.2d 459, 462 (5th Cir. 1978).[8]  Consequently, this court cannot conclude that the Alabama court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  Stephens is entitled to no relief on this claim.

## B.  PROCEDURALLY DEFAULTED CLAIMS

In their answer, the respondents maintain that several of Stephens' claims are procedurally barred from review by this court because Stephens failed to present the claims to the state courts in accordance with the state's procedural rules.  Specifically, the respondents assert that Stephens' claims regarding his inculpatory statement, admission of evidence of prior bad acts, admission of photographs to the jury, separate presentation of

---

[8]  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

capital aggravating factors in the indictment, and entitlement to instructions of lesser included offenses from procedurally barred from review because Stephens failed to present these issues to the Alabama Supreme Court in his petition for certiorari on direct appeal. Although Stephens raised these claims in his direct appeal from the circuit court to the Alabama Court of Criminal Appeals, Stephens raised only the issue of his sentencing in his petition for certiorari to the Alabama Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir. 2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Collier v. Jones*, 910 F.2d 770, 773 (11th Cir. 1990).

As a prerequisite to filing a federal habeas action, the petitioner must have properly exhausted state court remedies, either on direct appeal or in a state post-conviction petition, 28 U.S.C. § 2254(b), thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." *Duncan v. Thomas*, 513 U.S. 364, 365

(1995) quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted); *Kelley v.*

*Sec'y for Dep't of Corrs.*, 377 F.3d 1317, 1342-1344 (11th Cir. 2004) (a petitioner cannot

raise claims in federal court if those claims, including the factual basis for the claims, were

not first properly exhausted in state court.).  To exhaust state remedies in accordance with

the exhaustion requirement, the petitioner must fairly present every issue raised in his federal

petition to each appropriate state court, including the state's highest court, alerting that court

to the federal nature of the claim and a statement of the facts which entitle him to relief.

*Duncan,* 513 U.S. at 365-366; *O'Sullivan,* 526 U.S. at 845; *Picard,* 404 U.S. at 277-278.

"[F]or purposes of exhausting state remedies, a claim for relief in a habeas corpus must

include reference to a specific federal constitutional guarantee, as well as a statement of the

facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996);

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("In order to be exhausted, a

federal claim must be fairly presented to the state courts."); *Edwards v. Carpenter*, 529 U.S.

446, 452 (2000) (the exhaustion requirement is not satisfied when "the ineffective-assistance

claim was 'presented' to the state courts [but] not presented in the manner that state law

requires.").  It is not sufficient merely that the federal habeas petitioner has been through the

state courts, *Picard,* 404 U.S. at 275-76, nor is it sufficient that all the facts necessary to

support the claim were before the state courts or that a somewhat similar state-law claim was

made, *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (citations omitted).  Exhaustion is not

satisfied 'merely' if the petitioner presents the state court with 'all the facts necessary to support the claim' or even if a 'somewhat similar state-law claim was made.' *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (citation omitted)." *Pearson v. Sec'y for Dept. of Corrs.*, 273 Fed. Appx. 847, 849-850 (11th Cir. 2008). The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim." *Picard,* 404 U.S. at 277 (alteration in original). "Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley*, 377 F.3d at 1343-1344. The court further advised that

> [t]o ensure exhaustion, petitioners must present their claims in this manner of clarity throughout 'one complete round of the State's established appellate review process.' *O'Sullivan*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). As long as state supreme court review of a prisoner's claims is part of a state's ordinary appellate review procedure, prisoners of that state must present their claims to the state supreme court to preserve those claims for federal review, even if review by that court is discretionary. *See id*. at 848-49, 119 S.Ct. at 1734.

*Id.*, at 1345.

Stephens failed to properly exhaust his claims regarding his inculpatory statement, admission of evidence of prior bad acts, admission of photographs to the jury, separate presentation of capital aggravating factors in the indictment, and entitlement to instructions of lesser included offenses in the state courts and no remedy remains before those courts in which Stephens can obtain review of these claims. The aforementioned claims are therefore

35

precluded from federal review.  This court may reach the merits of Stephens' procedurally defaulted claims

> only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)]. . . . Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2678.  A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent.  *Id*."

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2008).

### 1.  **Cause and Prejudice**.

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir. 2002).

*Henderson*, 353 F.3d at 892.  The court provided Stephens an opportunity to establish cause for his defaults and he responded by asserting that the ineffectiveness of his counsel is cause for his default.

Ineffective assistance of counsel will excuse a procedural default only when the ineffective assistance claim itself has been independently raised and properly exhausted in the state courts.  *Edwards*, 529 U.S. at 453 (A federal habeas court is barred from considering a procedurally defaulted "ineffective-assistance-of-counsel claim asserted as

36

cause for the procedural default of another claim" unless the petitioner establishes "the cause-and-prejudice standard with respect to [the ineffective assistance claim]."); *Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("[A] claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) (a procedurally defaulted claim of ineffective assistance of counsel cannot serve as cause to excuse the default of a separate claim). Stephens fails to establish cause and prejudice for his defaults on these claims. Thus, any claims of ineffective assistance counsel cannot constitute cause necessary to excuse Stephens' procedural defaults. In addition, the court finds that no allegations of ineffective assistance of trial and appellate counsel would justify Stephens' failure to properly exhaust the procedurally defaulted claims.

Based on the foregoing, the court concludes Stephens has not demonstrated cause for his failure to present his defaulted claims to the state courts in compliance with applicable procedural rules. Furthermore, Stephens has presented nothing which establishes the existence of actual prejudice emanating from infringement of federal law. Nevertheless, this court may still reach the merits of Stephens' procedurally defaulted claims in order to prevent a fundamental miscarriage of justice

**2. Fundamental Miscarriage of Justice**. The miscarriage of justice standard is directly linked to actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner

must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "[T]he *Schlup* standard is demanding and permits review only in the '"extraordinary"' case." *House v. Bell*, 547 U.S. 518, 538 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." *Id.*, at 537. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with ***new reliable evidence*** -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324 (emphasis added).

Stephens does not raise an "actual innocence" claim, and thus, he has failed to make the requisite showing of actual innocence as he has presented no "new reliable evidence" nor do his allegations suggest that any such evidence exists which could satisfy the stringent standard set forth in *Schlup*.   Stephens' procedurally defaulted claims are therefore foreclosed from federal habeas review.

## CONCLUSION

Accordingly, for the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief be denied and that this case be dismissed pursuant to 28 U.S.C. § 2244(d).  It is further the RECOMMENDATION of the Magistrate Judge that the costs of this proceeding be taxed against the petitioner.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **April 9, 2013**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain

39

error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 26th day of March, 2013.

_____/s/Charles S. Coody_____

CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE